## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN E. MIZIC,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PATRICK PACIOUS, et al.** | : | **NO. 17-5023** |
| **Defendants.** | : | |

## MEMORANDUM

**STENGEL, Ch. J.**                                      **NOVEMBER 20, 2017**

Plaintiff John E. Mizic brings this civil action pursuant to Title III of the Americans with Disabilities Act based on allegations that the defendants failed to accommodate his and his wife's service animal when they checked in for a hotel reservation. Plaintiff seeks leave to proceed *in forma pauperis*. The Court will grant plaintiff leave to proceed *in forma pauperis* and dismiss his complaint.

### I. FACTS

Plaintiff and his wife are disabled and have a service dog to assist them with their disabilities. On June 28, 2017, they made a reservation online for a room at the Comfort Inn Lehigh Valley West for the night of July 29, 2017 in the amount of $111.87. The reservation was for a non-smoking room with a king bed, and included a hair dryer, coffee maker, microwave, refrigerator, radio, free internet, a free breakfast, air-conditioning, and a 32 inch LCD/Plasma television. Plaintiff and his wife requested and were given an early check in.

Plaintiff and his wife regularly travel with their service dog. According to the complaint, their disabilities prevent them from traveling more than an hour at a time in the car, which means they must stay at a hotel if they are traveling further than an hour away. The complaint also

indicates that plaintiff and his wife have experienced difficulties in the past with hotels that would not accommodate their service dog.

Plaintiff and his wife arrived at the Comfort Inn on July 29th around 2:00 p.m. Plaintiff and his wife were initially assigned to room 406 on the fourth floor of the hotel. Perhaps because of their prior negative experiences, they surreptitiously recorded their entire conversation with the front desk clerk off the bat, a transcript of which is included with the complaint.[1] According to the transcript, when plaintiff informed the clerk that he was traveling with a service animal, the clerk stated that he would need to switch the room because "pets" were not permitted on the fourth floor.

Plaintiff asked to see a manager and complained about the room change. The manager informed plaintiff that, regardless of whether an individual was traveling with a pet or a service animal, animals were not permitted on the fourth floor. Plaintiff's conversation went as follows:

Plaintiff: [The Clerk] wants to switch our room because we have Service Animals.

Manager: Yea, because there are rooms that are designated just for regular rooms, not for pets.

Plaintiff: It's not pets, they're not pets, [they're] Service Animals.

Manager: That's fine. No, but it's still an animal in a room, so where you have somebody who has allergies and they can't be around, have pets. Or ever had a pet in it. That's all, but he's just switching it like that, he's not charging you.

Plaintiff: No, I know he's not charging me, but

Manager: You just can't be on a floor, that has animal.

Plaintiff: Oh

Manager: That's all.

Plaintiff: Are you sure about this?

---

[1] Plaintiff appears to have recorded the conversation and later transcribed it from the recording.

Manager:  Yea, absolutely.

Plaintiff:  Ok. Alright well

Manager:  No it's for cleaning purposes, that's all.

Plaintiff:  Well, we're not supposed to be treated any different than anyone else and the service animals. Our Service Animals- Ok Dogs aren't animals considered pets.

Manager:  I understand.

Plaintiff:  You do?

Manager:  But for somebody with allergies that asks for a room that specifically

Plaintiff:  OK

Manager:  for a room that never had a pet in it, okay never had any animals. I – don't care if it's a bird, a reptile, anything.

Plaintiff:  Okay

Manager:  and you people come in that have allergies

Plaintiff:  So you're sure about this?

Manager:  Yes, absolutely

Plaintiff:  and you're sure about the disability acts, what it says

Manager:  Absolutely, we're not doin, we're not treating you any different

Plaintiff:  OK

Manager:  It's, it's just the same room we just have rooms that are designed that have animals in them, so when somebody else would call up

Plaintiff:  Well

Manager:  And they would request that they would

Plaintiff:  I'm allergic to cats

Manager: Exactly

Plaintiff:  so, so if you put me in a room that has animals, and there were cats in it, that's going to affect me too.

Manager:  Exactly, but that's the rooms that we have that are pet friendly.

Plaintiff: ok, ummm.

Manager:  So, so your animal is a dog?

Plaintiff:  Yea he's, he's a dog

Manager:  Ok

Plaintiff:  But not considered a pet.  There's a difference.  I know you, you.  I understand what you're saying and let me tell you we aleady had this in court.

Manager: Ummm

Plaintiff:  So I'm letting you know now.

Manager:  I understand Sir, what would, what would you like?  I cannot have you on a floor that would have a dog if someone else there the whole fourth floor is requesting not to hear that dog.  Not to you know hear him bark.

Plaintiff:  Not to hear him bark or anything.

Manager:  That's why, that's the reason for it.  It's not anything, I'm not trying to inconvenience you.

Plaintiff:  Oh well I, we're not gonna stay then

Manager:  OK

Plaintiff:  OK

Manager:  alright if that's your decision.

Plaintiff:  Yep, we shouldn't be treated any differently than anyone else.

Manager:  You're not being treated any differently.

Plaintiff:  Well, if you switch our rooms because of Service Animals.  Then you're treating us differently OK than any other person that would walk in here.

Manager:  So if, if someone comes in and they have an allergy and they are requesting

Plaintiff:  I don't know what to tell you.

Manager:  Well, I mean it's the same thing and they are requesting not to be on a floor that an animal ever been in – We

Plaintiff:  OK

Manager:  would have to switch them to that fourth floor.

Plaintiff:  No, I get it, what your

Manager: Because they are going to request it

Plaintiff:  I get what you're saying but

Manager:  but I can't, I can't have

Plaintiff:  I'm letting you know now that

Manager:  Would you like to see the room?

Plaintiff:  No, I'm fine.  I don't wanna – I don't wanna

Manager:  I can show you, I mean

Plaintiff:  I know, I know, this is, this is the problem.

Manager:  OK

Plaintiff:  My wife and I get treated differently everywhere we go because of our disabilities, especially my wife OK, and we have to make a stand sooner or later to where we won't accept that

Manager:  I understand

Plaintiff:  Alright an that's what we're doin

Manager:  I understand.  Would you like to see the room, it's a renovated room, [they're] all nice rooms, let's, can you, both the fourth floor and the first floor are renovated, it's the same room, Can I have a key to go show him the room?

(Compl. Ex. B.)

It is not clear whether plaintiff and his wife ever looked at the room or whether they left on the spot because they refused to accept a room on a different floor. They ultimately traveled back home, causing plaintiff's wife severe pain as a result of the drive.

Based on those events, plaintiff filed this lawsuit pursuant to Title III of the Americans with Disabilities Act against Patrick Pacious (the Chief Executive Officer of Choice Hotels, Inc.), Hillwood Hotel L.L.C., Nichole Johnson (identified as the General Manager of the Comfort Inn Lehigh Valley West), and John Doe (the front desk clerk at the hotel). The complaint alleges that plaintiff and his wife were excluded from a place of public accommodation—i.e., the Comfort Inn—and that the defendants failed to accommodate their disabilities. Plaintiff seeks an injunction prohibiting the defendants from further discrimination, damages and other miscellaneous relief.

## II.     STANDARD OF REVIEW

Plaintiff's motion to proceed *in forma pauperis* is granted because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the complaint if it fails to state a claim. To survive dismissal for failure to state a claim, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

### A.    Claims Raised on Behalf of Plaintiff's Wife

Although plaintiff suggests in the body of the complaint that his wife is also a plaintiff in this case, she is not named as a plaintiff in the caption of the complaint in accordance with Federal Rule of Civil Procedure 10 and she did not sign the complaint or motion to proceed *in forma pauperis* in accordance with Federal Rule of Civil Procedure 11.  Accordingly, she is not a party to this case.  Additionally, plaintiff lacks standing to pursue claims on behalf of his wife and, even if she were a party to this case, he would not be able to represent her because a non-attorney proceeding *pro se* may not represent others in federal court.  *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).  The Court will therefore dismiss any claims raised on behalf of plaintiff's wife without prejudice.

### B.    Standing

"To satisfy the 'case or controversy' standing requirement under Article III, § 2 of the United States Constitution, a plaintiff must establish that it has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action." *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)); *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 152 (3d Cir. 1999).  As only prospective injunctive relief is available in a private action under Title III of the ADA, *see Clark*

*v. Burger King Corp.*, 255 F. Supp. 2d 334, 341 n.8 (D.N.J. 2003) (citing 42 U.S.C. § 12188)), a Title III plaintiff "must show that he or she is likely to suffer *future* injury from the defendant's illegal conduct."[2] *Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 159–60 (3d Cir. 2006) (citing *Roe v. Operation Rescue*, 919 F.2d 857, 864 (3d Cir. 1990)). In determining whether a plaintiff has standing under Title III, courts focus on "the likelihood of the plaintiff's return to the place of public accommodation," which requires consideration of "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definiteness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." *Wittmann v. Island Hosp. Mgmt.*, No. CIV. 09-3698 RMB KMW, 2011 WL 689613, at *5 (D.N.J. Feb. 18, 2011); *see also Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008). Plaintiff's proximity to the defendant's place of business bears less weight when the defendant is a hotel. *See Wittmann*, No. CIV. 09-3698 RMB KMW, 2011 WL 689613, at *6.

Here, plaintiff alleges that he and his wife must stay at a hotel if they travel more than an hour away due to their disabilities, and the Comfort Inn is approximately an hour drive from their home, making it possible that they might seek to stay there in the future. They also allege that they travel "frequently" with their service animal. (Compl. at 8.) However, nothing in the complaint sheds any light on the frequency with which plaintiff visits the area where the Comfort Inn is located, future plans to visit the area, whether plaintiff has ever stayed at the Comfort Inn in the past, or plaintiff's desire to return to the Comfort Inn in the future. As it is not clear from the complaint whether plaintiff is likely to return to the Comfort Inn in the future, the complaint, as pled, does not establish that plaintiff has standing. *See generally Disabled in Action of Metro. New York v. Trump Int'l Hotel & Tower*, No. 01 CIV. 5518 (MBM), 2003 WL 1751785, at *7

---

[2] To the extent plaintiff requests damages, his claims are dismissed because such relief is not available under Title III.

(S.D.N.Y. Apr. 2, 2003) ("Courts considering ADA claims have found that disabled plaintiffs who had encountered barriers at restaurants, stores, hotels, or stadiums prior to filing their complaints have standing to bring claims for injunctive relief if they show a plausible intention or desire to return to the place but for the barriers to access.") (collecting cases).

### C. Failure to State a Claim

Even if plaintiff has standing, the complaint is subject to dismissal because plaintiff has not stated a plausible violation of Title III of the ADA. Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Regulations issued under Title III by the Department of Justice require public accommodations to "modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302; *see Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012). "To state a claim of disability discrimination under Title III of the ADA, 'a plaintiff must show (1) discrimination on the basis of a disability, (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator.'" *Harty v. Burlington Coat Factory of Pennsylvania, L.L.C.*, No. CIV. A. 11-01923, 2011 WL 2415169, at *9 (E.D. Pa. June 16, 2011) (quoting *Dempsey v. Pistol Pete's Beef N Beer, LLC*, Civ. A. No. 08-5454, 2009 WL 3584597, at *3 (D.N.J. Oct. 26, 2009)).

Here, plaintiff was not excluded from a place of accommodation because of his disability or service animal. The manager and front desk clerk did not prevent plaintiff from staying at the

hotel or deny him access to a room matching the description of the room he reserved. Indeed, plaintiff was offered a comparable room to the one he reserved, just on a different floor of the hotel from the room to which he was originally assigned so that he would be staying in an area of the hotel designated to accommodate animals—whether pets or service animals. It is apparent from the complaint that the hotel had a procedure to accommodate service animals—i.e., certain rooms were designated for that purpose—and, pursuant to that policy, the manager offered plaintiff a reasonable accommodation for his disability. Rather than stay in the room he was offered, plaintiff chose to leave.

It is possible that plaintiff's difficult experiences with hotels in the past led to his frustration during this encounter and caused him to view the manager's statements in a negative light. However, everything in the complaint reflects that the hotel provided an objectively reasonable means of accommodating plaintiff's disability. The reason for the change in room was not to discriminate against plaintiff, but to provide plaintiff with an equivalent room that accommodated animals so that other guests who might have allergies or who did not want to be around animals could likewise be accommodated. It was plaintiff's choice not to accept the room that he was offered.

**IV.     CONCLUSION**

As it is apparent from the complaint that the defendants did not violate Title III of the ADA, the Court will dismiss plaintiff's complaint. Plaintiff will not be given leave to amend because amendment would be futile. An appropriate order follows, which shall be docketed separately.